## PORTER B. GODARD, Plaintiff, v. HENRY S. CONRAD, Administrator, etc., Respondent; SARAH E. SEARCY, Appellant.

### Kansas City Court of Appeals, April 1, 1907.

1. **BILL OF INTERPLEADER: Stakeholder: Personal Property: Source of Title.** While honest claims are asserted derived from a common source and the stakeholder of personal property is in a neutral position without a claim of his own, the jurisdiction of equity over the matter in controversy is fixed.

2. **GIFTS: Inter Vivos: Delivery: Consideration.** To constitute a gift *inter vivos* there must be intention to give *in presenti* and a delivery so that the donee becomes the owner, and a gift to take effect in the future is without consideration and void.

3. **———: ———: ———: ———: Trusts and Trustees: Evidence.** On the evidence a certain transaction is held to have constituted neither a gift *inter vivos* nor an express trust.

4. **———: Causa Mortis: Delivery.** The same rule applies to gifts *causa mortis*.

5. **———: Inter Vivos: Causa Mortis: Wills: Trusts and Trustees.** The evidence relating to a transaction between a sick man and his friend is reviewed and held to constitute neither a gift *inter vivos, causa mortis*, a nuncupative will nor a trust.

6. **———: Imperfect: Office: Equity.** Equity will not interpose to perfect a defective gift or a voluntary settlement made without consideration.

7. **———: Title: Divestiture: Administrator.** On the evidence the donor never divested himself of the title to the property and it therefore remained his and at his death passed to his administrator.

Godard v. Conrad.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*C. R. Pence* and *James G. Smart* for appellant.

(1) The undisputed evidence shows that the diamond stud was given to appellant by Patterson Stewart in 1898, while she was occupying his house as tenant. No element was lacking to constitute this a valid gift *inter vivos.* There were an intention to give, a delivery of possession, and an acceptance by the donee. 20 Cyc. of Law and Procedure, 1192; Brandon v. Dawson, 51 Mo. App. 237; In re Estate of Soulard, 141 Mo. 657. (2) The fact that immediately after the diamond stud was given to appellant she returned it to Patterson Stewart for him to wear to avoid trouble with his married sons, with the remark that she "would have plenty of time to wear it afterwards," did not undo or destroy the gift then wholly executed by delivery to her of the possession. Brandon v. Dawson, 51 Mo. App. 257. (3) In determining the question of delivery, sight should not be lost of the relation existing between the parties; donor and donee, nor the strained relations between the donor and his sons. Schooler v. Schooler, 18 Mo. App. 70. (4) While the undisputed evidence shows delivery to appellant in 1898, yet if delivery were wanting to constitute a gift *inter vivos,* appellant's right to the diamond stud should be enforced as an express trust. Banking Co. v. Miller, 190 Mo. 640; In re Estate of Soulard, 141 Mo. 642; Mize v. Bank, 60 Mo. App. 358. (5) On the 20th day of May, 1903, five days before Mr. Stewart's death, the diamond stud, the gold watch, chain and charm were delivered by appellant to Mr. Godard for safe keeping, with the consent of Mr. Stewart, the latter stating, "If I pass in my checks, and I hope I won't, I want her to have them." Thus did

Mr. Godard receive these articles subject to the express direction of Mr. Stewart. Leaving out of consideration the gift of the diamond to her prior to this time, the delivery of the diamond, watch, chain and charm to Mr. Godard with this direction and request is sufficient alone to establish her right in them as a gift or as an express trust. Banking Co. v. Miller, 190 Mo. 640; In re Estate of Soulard, 141 Mo. 642; Mize v. Bank, 60 Mo. App. 358; Darling v. Emery, 74 Vt. 167, 52 Atl. 517.

*E. E. Porterfield* for respondent.

(1) Appellant makes no claim in her brief as to a gift *causa mortis*. The statement of Patterson Stewart of May 20, 1903, at the time he arranged with Mr. Godard to take for safe keeping, until his recovery from his illness, his diamond stud and other jewelry, "If I pass in my checks, and I hope I won't, I want her (referring to Mrs. Searcy) to have them," does not make a gift *causa mortis*. The law is well settled to the contrary. McCord's Admr. v. McCord, 77 Mo. 166; Bieber's Admr. v. Boeckmann, 70 Mo. App. 503; Walter v. Ford, 74 Mo. 195; In re Estate of Soulard, 141 Mo. 657; Dunn v. Bank, 109 Mo. 98. (2) The claim of appellant that Patterson Stewart gave her the diamond stud in 1898 is thoroughly discredited by the testimony of Mr. Godard, Mrs. Barton, the professional nurse and the testimony and conduct of the appellant herself. (3) That Patterson Stewart had previously given the diamond stud to Mrs. Searcy, or that it belonged to her, was evidently far from the mind of Mr. Stewart on May 20, 1903. (4) An examination of the cases cited by appellant touching her claim of an express trust will show that the facts in those cases differ so vastly from the facts here that those cases are no authority in this case. (5) To constitute a valid gift *inter vivos*, there must be an intention to give and a

delivery to the donee, or to some one for him, of the property given.    Jones v. Falls, 101 Mo. App. 544; Gartside v. Pahlman, 45 Mo. App. 164.    (6)  Patterson Stewart had the same dominion over the diamond stud after the alleged gift of it by him to Mrs. Searcy in 1898 as he had before that date and that dominion continued to the moment of his death.    He gave it to Mr. Godard five days before he died to keep until he got well.    He wore the diamond stud from the very day of the alleged gift as long as he wore a shirt, five years or more.    Thomas v. Thomas, 107 Mo. 463; In re Estate of Soulard, 141 Mo. 642.    (7)   The finding of a chancellor will be deferred to by the appellate court unless he has manifestly disregarded the evidence.

JOHNSON, J.—Plaintiff, as stakeholder of certain personal property, filed a bill of interpleader in which he seeks the protection of a court of equity against rival claimants.    The defendants named in the petition are the administrator of the estate of Patterson Stewart, deceased, and Sarah Searcy.    Each answered claiming to be the owner of the property.    The claims asserted are hostile, are derived from a common source, and, as plaintiff is in a position of neutrality, without any claim of his own to the subject-matter, jurisdiction of equity over the controversy between the contesting claimants is conceded and cannot be gainsaid.    During the trial, plaintiff delivered the subject of dispute into the registry of the court.    The issues between the claimants were decided in favor of the administrator, and defendant Searcy appealed from the judgment entered in his favor.

Patterson Stewart died in Kansas City on the twenty-fifth day of May, 1903, intestate, and in due time, letters of administration were issued to the present administrator.    Five days before the death of Mr. Stewart, and during his last illness, plaintiff received from him the property in controversy, which consists of

a large diamond shirt stud, a gold watch and chain and a gold locket, all of the value of about five hundred dollars, the stud being the most valuable article. The circumstances attending the delivery of these articles to plaintiff are these: Plaintiff, who was the attorney of Mr. Stewart, was summoned by Mrs. Searcy, at whose house Mr. Stewart was lying very ill, to an interview relative to the sick man's business affairs. He responded, and what transpired appears in a written memorandum which he had made immediately on returning home from the interview. It is as follows:

"Last night (May 19) Mrs. S. telephoned she would like me to take Mr. Stewart's diamond, watch, chain, etc., which she had put away when Mr. Stewart was taken sick, so no one would get them, and keep until he got well, so they would be safe, and I told her I would do it. She spoke of it again when she came down in p. m. (19th) to get some money to use for him, and I gave her checks to get signed, but did not give money. I stopped at house on my way home on 20th (today) about 5:45, and Mrs. S. let me take above articles. She said Mr. S. had told her he wished Tom (one of his sons) to have the diamond in case of his death, as he had not had as much as the other boys. The nurse heard Mrs. S. tell me this. After I had received above articles and given above receipt to show Mrs. S. had turned the things over to me if boys should demand them, I spoke to Mr. Stewart and asked him if he wished me to take his diamond, etc., and keep for him until he should get up, as Mrs. S. preferred I should, as so many were coming in and out there, and she was afraid some one might get them, and he told me he wished me to take them. And, after a moment, he said, 'If I pass in my checks, I want her to have the diamond' (pointing to Mrs. Searcy as he said this). I asked him what I should do with his watch and chain. He replied, with some effort, that he wanted Mrs. S.

to have them too, as she had been so good to him. He also said he wanted to give her a '$100 extra' because she had cared for him so well and been so kind to him. He also said he wanted 'her' (pointing to the nurse) paid well for what she did for him. The nurse and Mr. Banner of the 'Star' were present when Mr. Stewart said this."

Plaintiff took the property and put it in a safe place and retained it until he placed it in the custody of the court. A few days after the death of Mr. Stewart, he received from Mrs. Searcy the following notice: "Please retain the diamond stud and watch and chain, which you well know were given to me by Mr. Stewart, until further notice from me." Sometime after, the administrator made demand for the property and as the differences between him and Mrs. Searcy were found to be irreconcilable, this action followed.

The diamond is the principal bone of contention. Mrs. Searcy claims that five years before his death, Mr. Stewart gave that jewel to her. But a careful examination of all the evidence bearing on this claim convinces us that the learned trial judge properly rejected it. The circumstances under which plaintiff received the jewel, as detailed by him, both in his testimony and in the written memorandum above copied, are inconsistent with Mrs. Searcy's claim of ownership by prior gift *inter vivos*. He is corroborated by the testimony of the nurse. Indeed, there is no substantial difference among the witnesses with respect to what occurred in the sick room at the time plaintiff took charge of the property. Mrs. Searcy, herself, testified in part as follows: "We both went in there. I went first and said to Mr. Stewart, 'I am going to give these to Mr. Godard to take care of.' He said, 'All right, I wish you would. I think it is a good thing.' And Mr. Godard spoke up and says 'Mr. Stewart, if anything happens to you, what do you want

done with these things?' . . . He raised up his hands and said, 'I want you to give them to Mrs. Searcy.' He (plaintiff) said, 'Do you want her to have all these things?' He (Mr. Stewart) said, 'Yes, I want her to have everything.' He said then—made this, remark—'If I should pass in my checks, which I hope I won't, I want her to have all.' "

It is difficult to understand why Mr. Stewart should have assumed the right to dispose of the principal article about which they were talking, if he had previously executed a gift of it to Mrs. Searcy. And, further, we find the facts adduced by Mrs. Searcy and her witnesses in support of her claim of a prior gift fail to disclose the existence of all of the elements necessary to constitute a gift *inter vivos*. It appears from this testimony that about five years before, Mr. Stewart, who then was boarding with Mrs. Searcy, and who appeared to appreciate very highly her kindness and attention to him, which strongly contrasted with the unfilial conduct of his children, handed the diamond to her with the declaration that she should keep it. At the time, he had just had a stormy interview with one of his sons over money matters and was very angry. Mrs. Searcy, supposing he merely desired her to keep the property temporarily, offered to return it to him the next day, but was told a gift was intended, and that she should keep it as her own. We copy from her testimony: "I thought he was mad, and did not know he intended to give it to me then, and when I went in the next morning, he said why didn't I keep it — he gave it to me — I told him I thought he wasn't in earnest. He said he was, and wanted me to have it, and he wanted me to wear it then, but I didn't want to because the children were always jumping all over him — I told him I didn't want any trouble about it — for him to wear it, and I would have plenty of time to wear it afterwards." She returned the diamond to him, and there-

after, he constantly wore it as a shirt stud, except on a few isolated occasions when he permitted her to wear it.

The elements necessary to constitute a gift *inter vivos* thus are stated in Harris Banking Co. v. Miller, 190 Mo. 662: "To constitute a valid gift *inter vivos*, there must be an intention to give and a delivery to the donee, or to some one for him, of the property given. An intention of the donor to give is not alone sufficient; the intention must be executed by complete and unconditional delivery. Neither will a delivery be sufficient unless made with an intention to give. The transaction must show a completely executed transfer to the donee of the present right of property and the possession. The donee must become the owner of the property given. . . . A gift cannot be made to take effect in the future. Such a transaction would only amount to a promise to make a gift in the future, and, being without consideration, is void."

The evidence under consideration fails to show an unconditional delivery of the property to the alleged donee, consequently, an indispensable element of a gift *inter vivos* is wanting. It is argued by this claimant that though it should be held that the facts in evidence are not sufficient to sustain the claim of an executed gift, they are sufficient to show that the acts and declarations of Mr. Stewart created an express trust, of which the diamond was the subject-matter, and he the trustee. But we will dispose of this argument and this branch of the case by saying that we find as a fact, Mr. Stewart neither expressed nor entertained an intention to make a gift of the diamond to Mrs. Searcy at that time, nor at any time prior to the day when the property was delivered to plaintiff. We regard the testimony of Mrs. Searcy and her witnesses on this issue as being overborne by the weight of the other evidence. Certainly, in the absence of any intention on the part of Mr. Stewart to divest himself immediately of the

title to the property, there could be neither an executed gift nor an executed express trust.

Assuming then as we do, that Mr. Stewart was the owner of the property involved at the time of its delivery to plaintiff, we turn to a consideration of the questions of law arising under that hypothesis. Our chief concern is to ascertain the legal effect of the declaration of the owner of the property which accompanied its delivery in to the hand of plaintiff. "If I pass in my checks, I want her to have the diamond." "I asked him what I should do with his watch and chain and he replied, with some effort, that he wanted Mrs. Searcy to have them too, as she had been so good to him." Evidently, Mr. Stewart intended that Mrs. Searcy should have this property at his death. Wherever it may be done without violating settled rules and principles of law, courts always should endeavor to give effect to the expressed purposes of one approaching death, relative to the disposition of his property, but the safeguards thrown by the law around the estates of deceased persons are wise and salutary because they serve to prevent the presentation and establishment of fraudulent claims, and where an adherence to established rules and principles requires the rejection of a disposition of property, apparently intended by a deceased person, courts should not hesitate to follow the law. The claim of Mrs. Searcy cannot be upheld on the theory that the declaration of Mr. Stewart, coupled with the delivery of the property to plaintiff, constituted a valid testamentary bequest in her favor, because of the absence of a written will executed in the manner provided by law and of the conditions essential to bring the attempted disposition within the provisions of the statutes relating to nuncupative wills. [Sections 4626-4628, Revised Statutes 1899.] Nor can it be said that the delivery of the property to plaintiff executed a gift either *inter vivos* or *causa mortis* in her favor, nor that

plaintiff received the property as the trustee of an executed express trust. As before observed, to support a gift *inter vivos,* there must be an immediate and unconditional delivery of the subject to the donee. The act of delivery must operate as a complete divestiture of the donor with respect to the title and right of possession to the subject of the gift and the investiture of the donee. Harris Banking Co. v. Miller, *supra* and cases cited. The same rule applies to a gift *causa mortis.* [McCord, Admr., v. McCord, 77 Mo. 166; Bieber, Admr., v. Boeckmann, 70 Mo. App. 503; Walter v. Ford, 74 Mo. 195; In re Estate of Soulard, 141 Mo. (1. c.) 657; Dunn v. Bank, 109 Mo. 90.]

In support of the argument that the delivery of the property to plaintiff accompanied by the declaration under consideration should be regarded as the execution of an express trust, counsel of Mrs. Searcy rely on the principle announced in the following cases: Harris Banking Co. v. Miller, *supra;* In re Estate of Soulard, *supra;* Mize v. Bates Co. Bank, 60 Mo. App. 358. In those cases, it was held that a trust with respect to personal property could be created by parol, and that facts which would fall short of sustaining a gift *inter vivos,* nevertheless could suffice to create an express trust in favor of the intended donee, but in the two Supreme Court cases cited, the soundness of the doctrine stated by the court of appeals of New York in Young v. Young, 80 N. Y. 437, is conceded.

"It is well settled that equity will not interpose to perfect a defective gift or voluntary settlement made without consideration. If legally made, it will be upheld, but it must stand as made or not at all. When, therefore, it is found that a gift which the deceased attempted to make, failed to take effect, for want of a delivery or a sufficient transfer, and it is sought to supply this defect and carry out the intent of the donor by declaring a trust which he did not himself declare,

we are encountered by the rule above referred to. It is established as unquestioned law that a court of equity cannot by its authority render that gift perfect which the donor has left imperfect, and cannot convert an imperfect gift into a declaration of trust, merely on account of that imperfection." After agreeing to this statement of the law, the Supreme Court in the Miller case very properly observes that the mere·fact a party is not able to establish a perfect gift *inter vivos* does not of itself necessarily prevent him from establishing the existence of a valid trust in his favor, but in each of the cases under review, the owner of the property declared a purpose and intention of immediately divesting himself of the title to its *corpus*, and in effect, appointed himself a trustee to hold the title for purposes openly expressed. There being no consideration to support the grant, its validity depended on the theoretical transfer of the legal title to the subject thereof from the grantor as an individual to himself as trustee. Until he divested himself of the title, no trust existed, but his declaration that he held the property impressed with a trust was considered as sufficient evidence to show the completion of the transfer of title. And the Supreme Court, finding that as trustee, the grantor had become invested with the legal title, held that a valid trust had been created which a court of equity should enforce.

In the present case, Mr. Stewart expressed no intention to change the title to the property during his lifetime. He merely appointed plaintiff his agent to hold it during his illness. Until the day of his death, it was his individual property, subject to his control, and plaintiff, on his demand, would have been duty bound to render it to him at any time. He could dispose of it by will or gift as he saw fit. Had a trust been created, plaintiff at once would have become possessed of the legal title, and as trustee, would not have been subject to the will of the grantor, but would have held the

property subject to the terms of the trust. The declaration of Mr. Stewart that he desired Mrs. Searcy should have the property in the event of his death was in the nature of a testamentary bequest, and cannot be tortured by any process of reasoning into one establishing a trust in her favor. The title remained in Mr. Stewart to the moment of his death and on the occurrence of that event, as he had failed to dispose of it by valid will, passed to the administrator of his estate.

It follows that the judgment must be affirmed. All concur.