CITIZENS NATIONAL BANK, Plaintiff, v. WILLIAM McKENNA, Appellant, and THOMAS AUSTIN, Administrator, Respondent.

Kansas City Court of Appeals, February 3, 1913.

1. GIFT: Intention: Delivery. In order that there may be a valid gift of personal property, in addition to an intention to give, there must be an actual delivery.

2. TRUST: Personal Property: Donor: Trustee. A trust in personal property may be created verbally, nor is there any legal objection to the donor making himself the trustee.

3. ———: ———: Change of Title: Executory. In order to transfer money from the owner into a condition of trust for another, there must be a present and permanent change of title. It cannot be executory. Mere intention for future consummation is not sufficient.

4. ———: ———: Deposit in Bank: Possession. Where a person deposited money in a bank, taking a certificate of deposit payable "to himself or William McKenna," his nephew, with the statement, frequently made, that it was to be McKenna's if he, the depositor, died or anything happened to him, he keeping possession thereof until his death; it was *held* that this did not create a trust in McKenna's favor, and that the depositor's administrator was entitled to the money. Cases distinguished.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*H. K. White* and *John L. Schmitz* for appellant.

*P. W. Harding* and *A. W. Mullins* for respondent.

ELLISON, J.—The Citizens' National Bank of Chillicothe, Missouri, held $3500 which had been deposited by John McKenna. He died shortly after making the deposit and his administrator and William McKenna, a nephew, each claimed the money. The bank brought action in equity asking that the claimants be required to interplead for the money. They appeared and made their claim in due form. The result in the trial court was in favor of the administrator and William appealed.

Deceased, John McKenna, was an old man possessed of considerable property and without a family of his own. He died April 14, 1910. Near three weeks prior to his death, on March 26, 1910, he deposited the above sum in the bank and received the following certificate of deposit, payable to himself or interpleader William McKenna:

"The Citizens' National Bank of Chillicothe.

Chillicothe, Mo., Mar. 26, 1910.            $3500.00

John McKenna has deposited in this Bank Thirty-five hundred and no/100 dollars, payable in current funds to the order of himself or Wm. McKenna, six months after date, on return of this Certificate properly endorsed, with interest to maturity only at the rate of 3 per cent per annum.

This Certificate of Deposit is not subject to check and draws no interest after maturity. ·

R. F. McNALLY, Cashier."

Before this, he had a time deposit of $2000, drawing interest, and a checking account of $1500. At the time of the deposit we have just set out, he came to the bank in company with William, whom he introduced to the cashier: He stated to the latter, "I have

$2000 in a certificate and $1500 in my checking account. I want it put in a certificate to bear interest payable to my nephew William McKenna, in the event I die or anything happens to me.'' The cashier's testimony continued as follows:' ''I said 'I can make the certificate to you or Wm. McKenna.' I said 'Is that satisfactory?' and he said, 'Yes; I want his name on the certificate.' I asked him how he was feeling and he said he was a candidate for the 'cemetery,' and I noticed it because in my relations with him, it was the first time I heard him speak of dying. I put the certificate in an envelope and he stayed around the bank about an hour and I took him to the hospital in my automobile with his nephew. That was the last time I ever saw him and he died fifteen days later.''

On further examination the witness repeated that deceased said that he ''wanted the money to go to William in the event of his death or anything happening to him.''

During this conversation and transaction William said nothing. Deceased kept the certificate in his possession up to his death, without endorsement or change of any kind. There was other evidence tending to show that he intended the money for William. There was other evidence showing that a few days after the deposit, deceased escaped from the Sisters' Hospital in Chillicothe, where he was staying, having evidently become deranged. He was taken back. So there was evidence that he had $2375 in a glass jar buried under the floor of his cabin on his farm in Linn county, of which he told his nephew, John P. McKenna, and asked him to go and get it. There was some question made as to how this was accounted for. But we do not see that these matters can affect the question which finally determines the case.

Interpleader McKenna, realizing that to constitute a gift *inter vivos,* there must have been, added to an intention to give, an actual delivery of the gift

(Harris Banking Co. v. Miller, 190 Mo. 604; Godard v. Conrad, 125 Mo. App. 165), makes no claim on that theory. His stand is that there was a trust created in his favor, the deceased being both trustor and trustee of the fund. There is no legal objection to a trust in personalty being created in parol; a writing only being required for realty; nor is there any legal requirement that a third party shall be the trustee—the donor may make himself such. [Mize v. Bates Co. Nat. Bank, 60 Mo. App. 358.]

The question therefore is, did the acts of deceased make the deposit a trust fund for William with himself as the trustee in possession of the fund? In order to transfer the money from the owner into the condition of trust for another, there must be a present and permanent change of the title. If the trustor is himself the trustee, the title must have passed from him, he thenceforth holding the trust property for the beneficiary.

It seems clear to us that no such disposition was made of the money in controversy, and that no intention of deceased to make such disposition was shown. He said he wanted William to have it *if he died,* or anything happened to him; these expressions doubtless meaning the same thing. The circumstances rebut an intention for a present parting with the title. They show rather a reservation of his own ownership and control; and without doubt deceased considered the money in his power and ownership, if he should conclude to use it before he died. The Supreme Court, in quoting from Stone v. Hackett, 12 Gray, 227, said that equity would not regard a transaction as creating a trust so long as it remains executory. [Estate of Soulard, 141 Mo. l. c. 660.] The property must have passed out of the trustor so as to effectually pass the title, equitable though it be, to the *cestui que trust.* [Ib. 662.] And so the law is stated in Godard v. Con-

168 Mo. App. 17

rad, 125 Mo. App. 165, 175. In support of like suggestions the Supreme Court of Michigan said: ''It (the declaration of trust) must be such that from the time it is made the beneficiary has an enforcible equitable interest in the property, contingent upon nothing except the terms imposed by the terms of the declaration of the trust itself. If Mrs. Turner, in her lifetime, had declared her intention to sell and transfer these notes, could plaintiff have maintained an injunction to restrain such action, or, if she had actually sold them, could plaintiff have maintained trover against her for their value?'' [Botsford v. Burr, 141 Mich. 370.]

The form of the certificate, as well as his expression in directing its issuance, shows a testamentary disposition was intended, a disposition only to become consummated at his death without other direction; a condition incompatible with a trust. The words of the certificate, to pay ''to the order of himself or William McKenna,'' meaning that if he died William would then become the owner of it and could cash it.

It is not a hazardous statement to say that if deceased had not died for several years and in the meantime had cashed the certificate and used the fund, that no one would have been found to say that William had any claim upon it.

Reliance is placed on the case of Harris Banking Co. v. Miller, 190 Mo. 640. It is vitally dissimilar in essential facts. There as here, the dispute was over a certificate of deposit. The depositor took a certificate in his own name and then made a written unconditional and absolute indorsement to the claimant and delivered it to her to read, declaring it was hers, and afterwards asking her to take charge of it, which she refused to do and he continued to keep it for her. The opinion is an exhaustive discussion of the subject and approves of the law as we have herein stated it. There the creation of the trust ''was in the present

tense" and "a completed transaction;" "not that he intended to give it to her, but it was now hers, subject only in the right of himself to receive the interest thereon;" and that as to "this fund he had made a final disposition of it;" (l. c. 669, 670.)   And this, in effect, is the ruling in Godard v. Conrad, supra.

Nor is this case like that of Mize v. Bates Co. Nat. Bank, 60 Mo. App. 358, decided by this court.   There, a certificate of stock was surrendered to the bank by the father and three new ones issued, one to each of three children, and the dividends were credited by the bank to the father "as trustee" for the children.

It follows from the foregoing considerations that we approve the conclusion of the trial court and hence affirm the judgment.   All concur.