101 F.Supp. 262 (1951)
UNITED STATES
v.
DICKERSON et al.
No. 7214(2).
United States District Court E. D. Missouri, E. D.
September 24, 1951.
*263 Theron Lamar Caudle, Asst. Atty. Gen., and Andrew D. Sharpe and Benjamin H. Pester, Sp. Assts. to Atty. Gen., Drake Watson, U. S. Atty., of New London, Mo., and William V. O'Donnell, Asst. U. S. Atty., of St. Louis, Mo., for plaintiff.
J. T. Dickerson and Forrest Powell, Edmond, Okl., for O. W. Dickerson and Mason D. Dickerson.
James C. Jones, III, St. Louis, Mo., guardian ad litem for Beverly Jane Dickerson, Howard Dean Dickerson and Mason Orman Dickerson, infants.
Dewey Routh, Rolla, Mo., pro se, and for Fred C. King, as administrator of the estate of Jessie Maude Mundis, Edwin L. Mooney and Norma G. Mooney.
Leo Lyng, St. Louis, Mo., for John E. Kuziel, Mabel M. Kuziel, Florian Kuziel and Mary Kuziel.
HULEN, District Judge.
Plaintiff sues to enforce a tax lien on a tract of land, improved and equipped as a tourist court, in Phelps County, Missouri,[1] for payment of additional income taxes for 1920 assessed against defendant O. W. Dickerson.
The following issues are presented: (1) Is the tax liability extinguished by limitation? (2) Did title to the property rest in O. W. Dickerson as a trustee only, by virtue of an alleged trust set out in an instrument titled "Business Lease", as claimed by defendants, or did O. W. Dickerson inherit a one-half interest on death of his daughter Jessie Maude Mundis because the alleged "trust" executed by her is void, or in the alternative did the daughter hold the title as a trustee for her father O. W. Dickerson? (3) Is a decision of the Circuit Court of Phelps County, Missouri, determinative of the issue? (4) Is the tax lien valid as against defendants Mooney and Kuziel, who claim to be innocent purchasers for value?
In April 1921 O. W. Dickerson filed his income tax return for the year 1920 and a notice of deficiency in income taxes was sent to him by the Commissioner of Internal Revenue on December 20, 1930. On February 17, 1931 Dickerson filed a petition in the Board of Tax Appeals for the determination of his 1920 income tax liability. On April 26, 1934, upon a stipulation of the parties, the Board of Tax Appeals entered its final order declaring a deficiency *264 in income taxes for the year 1920 in the amount of $32,096.64. The Commissioner assessed this deficiency together with interest of $15,843.43 on May 18, 1934, on the Commissioner's Special List for the Collection District of Oklahoma. The list was received by the Collector on May 21, 1934, and on that date notice and demand was mailed to the taxpayer.
On November 1, 1943, the assessment was transferred from the Oklahoma District to the First District of Missouri. The Collector for the Missouri District filed a notice of tax lien in Phelps County, Missouri, on November 16, 1943, with the Recorder of Deeds, at Rolla, Missouri, seeking a lien on Trav-L-Odge.
Tax collection waivers were signed by O. W. Dickerson extending the time for collection to December 31, 1949. On July 2, 1949, Dickerson submitted an offer in compromise (on Form 656) whereby he agreed to the suspension of the running of the statute of limitations for the pendency of the offer and for one year thereafter. The offer was rejected about November 16, 1949. The suit was filed on May 25, 1950.
In his petition filed in the Board of Tax Appeals Dickerson alleged the taxes were barred by limitation. This allegation was denied in the answer, except that it was admitted in the answer that the taxes in controversy were income taxes for the years 1919 and 1920. The decision of the Board was entered upon a stipulation in which the parties agreed that effective upon the entry of the Board's order of redetermination the petitioner waived the restrictions applicable to assessment and collection, if any, contained in the applicable Internal Revenue Acts.
On January 21, 1939, the record title to Trav-L-Odge was in Bernard Stair. Stair executed a bond for a deed to W. E. Reed October 20, 1936. January 21, 1939, W. E. Reed and wife executed a bond for a deed to Jessie Maude Mundis. These instruments were recorded. Jessie Maude Mundis took possession and expanded the improvements from two original cabins. Jessie Maude Mundis, being in bad health, on February 24, 1948 executed a document titled "Business Lease" under which O. W. Dickerson took possession of Trav-L-Odge. This paper was recorded July 9, 1948.
The contract for sale resulting in delivery of bond for deed between Reed and Jessie Maude Mundis called for a down payment of $1,500. O. W. Dickerson testified he loaned his daughter $3,000 about this time. This sum was accounted for by a deposit made in the Tower Grove Bank in St. Louis, in the name of "Oil Well Drilling Corporation", a family corporation of which O. W. Dickerson was President. O. W. Dickerson testified he was repaid in full by his daughter. Checks were drawn on the Tower Grove Bank account  $1,500 on January 24, 1939; $1,000 on January 25, 1939; and $500 on February 28, 1939. The check for $1,500 was dated January 21, 1939, was payable to Jessie Maude Mundis, and bears the indorsement of W. E. Reed. O. W. Dickerson testified to lending his daughter an additional sum of $5,000 for making improvements. On November 6, 1939, a cashier's check was issued by the Security Bank at Blackwell, Oklahoma, to the Oil Well Drilling Corporation for $5,806.04. This was deposited in the Trav-L-Odge account in the Rolla State Bank and at once the Rolla State Bank issued its cashier's check for $5,000 to O. W. Dickerson, out of the deposit. This cashier's check bears the indorsement of O. W. Dickerson, followed by the indorsement of Jessie M. Mundis. O. W. Dickerson testified the $5,000 was paid by O. W. Dickerson selling for his account oil well machinery owned by Jessie Maude Mundis in excess of $5,000. Defendant Dickerson offered a letter dated February 9, 1939 (Defendants' Exhibit E) written by Jessie Maude Mundis to her stepmother, O. W. Dickerson's wife. In this letter the daughter tells of selling a residence in Oklahoma City to her father for $5,000, and that $3,000 was to be paid in cash "In the belief that the deal was satisfactory all around I went into this proposition at Rolla. [Trav-L-Odge] Of course I expected to have the Money to carry out my plans * * * the small amount Carl [her deceased husband] left me, and which I have guarded carefully was only enough to start *265 me here so now I will either have to complete a deal on the O. C. property or make a loan * * * I have stood pretty well on my own feet since I have been grown and have never even called on Dad for assistance of any importance".
Other portions of this letter indicate O. W. Dickerson at the time was insolvent and was living in his daughter's house free of rent. Insolvency as of this time is also suggested by the unpaid tax due plaintiff.
It is defendants' position that O. W. Dickerson's possession and sole interest in Trav-L-Odge was as his daughter's trustee. After operating Trav-L-Odge in her name for several years, the health of Jessie Maude Mundis failed. She was unable to continue operation of the enterprise. Defendant O. W. Dickerson and Jessie Maude Mundis consulted a lawyer in Rolla and had him prepare a "Business Lease" turning Trav-L-Odge over to O. W. Dickerson "as lessee", as of February 24, 1948. This instrument contains some formal lease terms. The land is legally described; use is restricted to a tourist hotel; term is fixed at twenty years; rental is $100 per month; repairs to be at cost of lessee; if destroyed by fire, to be restored by lessor; forfeiture for failure to keep provisions. The last paragraph reads: "Wherever the word `lessor' or `Lessee' is used herein it shall be construed to include the heirs executors, administrators, successors, or assigns of the parties." (Emphasis added.)
Inserted in the body of the lease is the following paragraph, the terms of which furnish the main issue of this law suit: "It is further understood and agreed that the lessor and lessee are daughter and father and that in the event of the death of the lessor at any time during the life of this lease the lessee shall be vested with full power and authority to sell and dispose of the premises herein leased if he shall so elect and desire, and execute in his own name necessary instrument of conveyance and at such price as to him shall seem proper, and the proceeds of said sale shall be held and retained by him in trust for the use and benefit of the living children of the son and brother of the parties, Mason D. Dickerson, for such time and under such conditions as the said lessee may elect and determine, The said lessee being vested with full power and authority to pay the income of the trust fund or any part thereof, or any part of the principal to such heirs and at such times as he may elect. And the said lessee as such trustee is further vested with power and authority to designate his successor in trust."
Defendants Mooney and Kuziel claim they are innocent purchasers. Jessie Maude Mundis died June 24, 1948, leaving as her only heirs O. W. Dickerson, her father, and defendant Mason D. Dickerson, a brother. On July 27, 1948, O. W. Dickerson executed a contract to sell Trav-L-Odge to defendants Mooney and Kuziel. He represented he was acting under powers contained in the "Business Lease". The contract was prepared by the same lawyers who wrote the "Business Lease". It is in conventional terms. The first paragraph reads: "Whereas, O. W. Dickerson is the owner and holder, by sales contract of premises * * *"
Then follows description of Trav-L-Odge. This transaction was closed, by the Stairs, in conformity with their bond for a deed conveying the property to W. E. Reed on August 10, 1948, and W. E. Reed and wife on the same day conveyed direct to defendants Mooney and Kuziel. The contract called for a payment to O. W. Dickerson on execution of the contract by Mooney and Kuziel of $2,500 plus a commission of $2,500, and a further sum of $3,500 on passing of the deed, as part payment on a purchase price of $55,000. The balance was secured by a deed of trust providing for monthly payments. Part of the down payments of Mooney and Kuziel are accounted for by O. W. Dickerson paying the balance due Reed on his sales contract (bond for a deed). The deed of trust made on closing sale to Mooney and Kuziel names O. W. Dickerson as payee of the note secured.
The record title to Trav-L-Odge at no time rested in either Jessie Maude Mundis or O. W. Dickerson. Examination of the records at the time of purchase by Mooney *266 and Kuziel would have shown title in Stair, and bonds for deeds up to and including Jessie Maude Mundis, then deceased, and the "Business Lease" under which O. W. Dickerson represented he was acting in the sale.
Defendants' plea of res judicata is based on a judgment of the Circuit Court of Phelps County. Fred C. King was appointed administrator of the estate of Jessie Maude Mundis by the Probate Court of Phelps County, Missouri, at Rolla, and on the 14th day of December, 1948, he filed a petition in that Court to discover assets, describing the note held by O. W. Dickerson for $46,500 secured by the deed of trust on Trav-L-Odge as an asset of the estate. Citation was issued. Following a hearing consisting of interrogatories to and answers by O. W. Dickerson (the answers alleged that by trust set out in the "Business Lease" O. W. Dickerson held the note as trustee), the Probate Court, on December 28, 1948, held the trust paragraph in the lease void and the note an asset of the estate of Jessie Maude Mundis. From this judgment O. W. Dickerson filed an affidavit for appeal to the Circuit Court of Phelps County. Plaintiff was never made a party to these proceedings.
The record of the Phelps County Circuit Court proceedings has confusing aspects. We reach the following conclusions. The Circuit Court minutes show an "appeal from the Probate Court" was docketed on January 25, 1949. Some defendants, by brief, designate the Circuit Court proceedings as an appeal from the Probate Court. None take a contrary position. We find it was. E. L. Mooney filed a motion to intervene on February 2, 1949. The Kuziels filed a like motion on April 2, 1949. On April 4, 1949, the "Children of Mason Dickerson made parties defendant" "entered their appearance". On April 16, 1949, a petition "for construction of a trust instrument" was filed. On December 14, 1949, stipulation for judgment was filed by the administrator of the Mundis estate, O. W. Dickerson, and Mason D. Dickerson, natural guardian of the children named as beneficiaries in the "Business Lease". A "judgment was entered on and in accordance with provisions of stipulation filed", holding the "Business Lease" created a trust. The Court appointed defendant Dewey Routh trustee instead of O. W. Dickerson.
As to knowledge of the plaintiff's claim, interest in the proceedings and reason for failure to make it a party in the Circuit Court, the following is from the record of the trial in this case:
"The Court: Did anybody tell the judge that the federal government had a claim on the property?
"Mr. Routh: There was no claim. There was a claim filed, a lien against O. W. Dickerson.
"The Court: Well, I am talking now about what was told the judge.
"Mr. Routh: The whole thing was explained to him.
"The Court: What do you mean by `the whole thing'?
"Mr. Routh: Every bit of the process from beginning to end. I think the court understood everything that had happened.
"The Court: Well, did anybody tell the Court that the government had a claim, a lien? Did anybody tell the Court that the government had an interest?
"Mr. Routh: Yes. Mr. Ringold was there and I believe another member of the crew, that is, the Federal Government, sitting back here, was there at the time, and I say there was a notice against O. W. Dickerson that this property had never been 
"The Court: I understand that. I am trying to find out what took place.
"Mr. Routh: The matter was discussed and gone over, as to the situation they had arrived in  the property was in bad repair and needed fixing.

* * * * * *
"The Court: I assume it was. The thing that particularly interested me, you say you saw two representatives of the federal government that were present in the conference.
"Mr. Routh: As I remember, that is right, in the conference, that just listened in. They sat there; they said nothing.
*267 "The Court: Were they present?
"Mr. Routh: As I remember, they were present, yes, sir.
"The Court: Well, did anybody tell the Court why they were there?
"Mr. Routh: I don't know whether they told the Court why they were there or not.
"Mr. Dickerson: Well, you were there.
"The Court: Were you there?
"Mr. Routh: Yes, I was there.
"The Court: Well, did you hear anybody tell the Court that the federal government was claiming an interest in the subject matter of this [suit or proceeding]?
"Mr. Routh: I don't think that we knew the federal government was claiming an interest in the subject matter of the trust estate. At that time, that was not knowledge to any of us. We knew that the federal government was claiming something against O. W. Dickerson, but at that time the feeling there was that this was this woman's property and that the claim was not against her but was against O. W. Dickerson, and the Court understood that.
"The Court: Well, who told the Court that, so that the Court understood it?
"Mr. Routh: I think I told the Court, for one, and then other attorneys who were there.

* * * * * *
"Mr. Routh: I didn't tell him what the government was doing. I told him what had happened and what notices we had had, and I had talked to some of the representatives of the federal government at that time, who were merely interested and asked me to furnish them with all procedures as we went along, which we furnished. A court order, a copy of everything was furnished to the government as we went along in this matter.
"The Court: Whom did you represent? The guardian?
"Mr. Routh: I represented the administrator.
"The Court: Why didn't you make the government a party?
"Mr. Routh: Well, as I say, at that time there was no definite  the government was watching this thing, as I understood it, they were watching the matter to see if Mr. Dickerson got any money out of the estate, and they filed a lien in order to get any money which might come out of the estate. It didn't occur to us that the government was a party to it.
"The Court: Well, you knew they had filed this [lien], did you not?
"Mr. Routh: Filed a lien.
"The Court: Against the property?
"Mr. Routh: Against what Mr. Dickerson owned, but there was no record there showing that Mr. Dickerson owned any property.
"The Court: You knew at that time, before this [Circuit Court decree] was made, that the probate court had attempted to decree that the property was owned [one-half], however, by Mr. Dickerson, didn't you?
"Mr. Routh: Yes. I was advising with the court at the time that was done.
"The Court: And that should have made you believe that the federal government had an interest in the property under its lien.
"Mr. Routh: If that was the final decree of the court, yes."
The pleading filed in the Circuit Court of Phelps County (Pl. Ex. 12) titled a "Petition for Construction of Trust Instrument", and also designated as an appeal from the "Probate Court", was signed by attorneys for Mason D. Dickerson as natural guardian for the latter's minor children. This petition contains these representations with reference to the estate of Jessie Maude Mundis and the status of the case in the Circuit Court:
"Under this trust there being no debts and no heirs but those mentioned in the trust instrument it had no place in the Probate Court, but being lodged there it finds its way into this court of equity by reason of appeal which was the only way that a proper construction could finally be had by a court of equity." (Emphasis added.)
*268 "* * * that no one can possibly be interested in this trust property and the trust funds from the sale of the property except the parties above referred to." (Emphasis added.)
Later the attorneys who filed this pleading filed a motion for leave to intervene and the motion was sustained.
The stipulation for judgment is signed by (1) an attorney for the administrator of the estate of Jessie Maude Mundis, (2) an attorney for O. W. Dickerson, and (3) the latter attorney also signs as attorney for the guardian of the minor children of Mason D. Dickerson.
One of the purposes of the decree is stated in the "Stipulation for Judgment" to be: "Wherefore, relying upon that maxim of equity which states that `equity regards and treats that as done which in good conscience ought to be done', and in order to perfect the titles of the intervenors and carry out the intent of Jessie Maude Mundis, * * *" (Emphasis added.)
The decree, or stipulation, proceeds to write a trust instrument for the deceased Jessie Maude Mundis, in accord with the stipulation for judgment.
The instrument signed by Jessie Maude Mundis provided the trustee would  "in the event of the death of" Jessie Maude Mundis, "during the life of the lease, the lessee (O. W. Dickerson) shall be vested" with powers as a trustee. The stipulation for judgment provides: "(e) That upon the execution of the instrument mentioned in Paragraph (c) above, O. W. Dickerson immediately took possession of said property as Trustee, and continued in that capacity up to and after the death of Jessie Maude Mundis."
We find no confirmation in the decree.
The instrument signed by Jessie Maude Mundis, as "lessor", made no provision for (a) duration of the trust; (b) distribution of the corpus; or (c) specific use to be made of income from trust. These omissions are supplied in specific detail by the Court's decree:
"8. That inasmuch as the original trust intrument did not fully set forth in particular the purposes, conditions and uses of said trust, that said trust shall hereafter be subject to the following terms, conditions and limitations:
"(a) The trust shall continue until such time as the youngest living child of Mason D. Dickerson shall have reached the age of twenty-one (21) years; that at said time the trustees are directed to terminate this trust under the direction and with the consent of the court then having jurisdiction of said trust and that the corpus of said trust together with all accumulations thereof be distributed equally, share and share alike, to the children of Mason D. Dickerson and if any said child should at said time be deceased, then to their surviving children, said surviving children taking the share that their parent would have received had they been living at the time of the termination of the trust." (Emphasis added.)
Following the decree by the Circuit Court of Phelps County the Court learned of the plaintiff's claim. This resulted in an order on February 26, 1951, that all future payments on the note secured by Trav-L-Odge be paid to the Clerk of the Court pending disposition of this case.
The addition to the record, on motion of defendant Kuziel, shows that Kuziel and Mooney paid $8,500 as a down payment on Trav-L-Odge at time of purchase. Part of this went to pay a balance on purchase price under the contract of Jessie Maude Mundis. Mooney paid $2,500 of this by cancelling a debt due him from Dickerson for $2,500 real estate commission in making the sale. Mooney has since sold his interest to Kuziel for the amount paid in as of time of sale, or one-half of $8,500. Prior to December 7, 1948, Kuziel and his wife made three payments of a total of $2,250 to O. W. Dickerson.
Since December 7, 1948, and prior to March 1, 1951, Kuziel and his wife have made payments aggregating $1,600 to Dewey Routh as trustee, and since March 1, 1951 have made payments to Charles R. Sands, Clerk of the Circuit Court, in the sum of $4,800.
*269 A jurisdictional issue is raised by defendants. It resolves into a question of venue, The claim is made that under the Code, Section 1396 of Title 28 and Section 3744 of Title 26 U.S.C.A., this suit could only be brought in either the district where liability for tax accrued, the taxpayer's residence, or where the return was filed. This Court meets neither of those requirements. However, this is a suit in rem. The property is within the territorial confines of this Division of this Court. The statutes cited do not apply. Venue is in this Court. United States v. Dallas Nat. Bank, 5 Cir., 152 F.2d 582, loc. cit. 586.

II.
The defense by plea of statute of limitations presents two issues: First, that the order of the Board of Tax Appeals, on May 18, 1934, assessing a deficiency for 1920 tax (return filed March 1, 1921) is not valid "for the reason that more than five years had expired [prior to May 18, 1934] after the return was filed"; second, that after the deficiency assessment of May 18, 1934, the last "collection waiver signed by the defendant O. W. Dickerson ended on December 31, 1949, and this suit was not brought" until May 25, 1950. As to the compromise waiver relied on by the plaintiff to extend time to and including date of filing suit, it is defendant O. W. Dickerson's position that "this alleged waiver * * * is void" because it was "never signed or accepted by plaintiff".
The argument is made that since plaintiff concedes the first notice of deficiency was sent to O. W. Dickerson on December, 20, 1930, this is an admission the five year statute of limitations had run, and that no waiver could have been signed prior to the end of the five year period because no claim was made by the plaintiff for a deficiency until 1930.
The decision of the Board of Tax Appeals was in response to a proceeding initiated by O. W. Dickerson. It was entered on a stipulation. In that proceeding O. W. Dickerson raised the issue of statute of limitations and the Government by denial put before the Board the necessity of a ruling on it. The records of the Board of Tax Appeals in the case have long since been destroyed. There was no appeal from the order.
The Board of Tax Appeals had jurisdiction to determine, from its record, if the tax for 1920 of O. W. Dickerson was barred by limitation. No appeal having been taken from its order disallowing the defense, the ruling is not in this proceeding subject to collateral attack by either party. In T. W. Warner Co. v. United States, 15 F.Supp. 160, 83 ct. cl. 495, the law is declared, 15 F.Supp. loc. cit. 168: "* * * it has been repeatedly held that where a taxpayer resorts to the Board, the remedy available to both the taxpayer and the Commissioner in the event of an adverse holding is by way of appeal to the federal courts mentioned. * * * It may be that if the Board of Tax Appeals had had the decision of the Supreme Court in Helvering v. Newport Co., 291 U.S. 485, 54 S.Ct. 480, 78 L.Ed. 929, before it an entirely different judgment would have been reached, but there is nothing said in the case which warrants the existence of a collateral attack upon the Board's judgment, which became final when not appealed from. Art Metal Construction Co. v. United States, 13 F.Supp. 756 [82 ct. cl. 666], decided by this court March 2, 1936." Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Bankers' Reserve Life Co. v. United States, 44 F.2d 1000, 71 Ct. Cl. 279, certiorari denied 283 U.S. 836, 51 S.Ct. 485, 75 L.Ed. 1448.
Was this suit filed within the time provisions of valid waivers? Defendant O. W. Dickerson admits executing waivers extending the time of filing to December 31, 1949. Defendant also concedes plaintiff's claim of executing a waiver up and including time of suit, in nature of an offer in compromise, but this last waiver defendant alleges to be "void" because never accepted by plaintiff, citing Joyce v. Gentsch, 6 Cir., 141 F.2d 891.
Plaintiff, for authority to file suit in May of 1950, relies on waiver on Form 656 (Pl.Ex. 5) executed by defendant O. W. Dickerson on July 2, 1949, which contains this provision:
*270 "In making this offer, and as a part consideration thereof, * * * the proponent hereby expressly waives:

* * * * * *
"The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending and for one year thereafter."
The waiver in the Joyce case, on Form 870, contained a provision that the offer in compromise was subject to acceptance by the Collector of Revenue, "and if not thus accepted, will have no force or effect". No such provision appears in the waiver relied on by the plaintiff in this case and the absence of such a provision destroys the authority of the Joyce case to support defendants' position.
The same Court which decided the Joyce case at a later date, in United States v. Bank of Commerce & Trust Co., 6 Cir., 124 F.2d 187, affirmed a ruling of the District Court, 32 F.Supp. 942, 944, holding the waiver on Form 656 binding on the taxpayer even though not accepted by the Commissioner. We quote from the opinion of the District Court:
"* * * the defendant filed an offer of compromise of One Thousand Dollars ($1,000), in full of the government's claim. This compromise offer was on Treasury Form 656 and contains the following provision:
"`The proponent hereby expressly waives:
* * *
"`2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending and for one year thereafter.'
"The Commissioner of Internal Revenue, by letter of March 31, 1938, rejected the compromise offer of the defendant, which has constantly, since September 30, 1933, denied liability for the tax claimed as due by the government; and has asserted its position that its tax for the year 1931 was, in fact, overpaid.

* * * * * *
"The provision with respect to waiver of the statute of limitations, contained in the offer of compromise signed by the defendant in the instant case, has been quoted in full earlier in this opinion. The waiver states distinctly that the running of the statute of limitations is suspended for the period during which the offer is pending, and for one year thereafter.
"Definite and unambiguous statements made by a tax payer in a written waiver of the statute of limitations must be given effect where made for the purpose of affording the tax payer opportunity for favorable action on his claim for credit on his tax. S. S. Pierce Co. v. United States, 1 Cir., Dec. 8, 1937, 93 F.2d 599."

III.
The record in this case presents the unnatural and unusual spectacle of an heir to a valuable estate doing his utmost to prevent title from becoming vested in him, patently because if title were to become so fixed the plaintiff's lien would admittedly absorb the interest of this heir.
When Jessie Maude Mundis died no effort was at first made to administer on her estate. Some months after the death of Jessie Maude Mundis, O. W. Dickerson, as father having first right to administer, waived, and defendant King was appointed. King started out very industriously to protect the estate and to discover assets. In a short space of time he had secured a decree in the Probate Court of Phelps County that the trust provision of the "Business Lease" was invalid, thereby vesting a one-half interest in the estate represented by Trav-L-Odge, or note secured by it, in O. W. Dickerson. O. W. Dickerson at once took exception to the decree, denying any claim of ownership and disavowing acts of others to make him a part owner to property left by his daughter. This must have been a mystery to strangers to the facts of this record. O. W. Dickerson *271 took an appeal to the Circuit Court of Phelps County to set aside the judgment of the Probate Court. The brother of Jessie Maude Mundis, Mason D. Dickerson, a stranger of record to the case in the Probate Court, by the same attorney as represents O. W. Dickerson filed a petition in the Circuit Court to have the trust in the "Business Lease" construed in favor of his children designated in the instrument. After filing the petition he sought and secured an order making him a party to the suit.
All of these parties to the proceeding in the Circuit Court at the time of that proceeding knew of the claim of the plaintiff against the interest of O. W. Dickerson under the tax lien. Yet it was represented to the Court in the petition filed by Mason Dickerson "that no one can possibly be interested in this trust and the trust funds" except the parties to the suit. No more positive statement could have been made. Not only the failure to reveal the claim of the plaintiff to the Court, but the affirmative representation by pleading of non-interest, finds no plausible explanation to sustain justification in the record. The proceedings in the Circuit Court become understandable only when stamped with a determination of the parties to avoid vesting of any interest in the estate in O. W. Dickerson, to avoid the plaintiff's tax lien. The action of the administrator for the estate in joining in the stipulation by which the estate of Jessie Maude Mundis was divested of title to its assets rests without explanation in this record. His actions were not in the interest of the estate, nor in accord with the plain letter of the decided cases, as he must have known in view of the decision he had sought and secured in the Probate Court.
The parties to the stipulation for judgment set out in that instrument as one of its purposes to "perfect the title of the intervenors". Since plaintiff's lien against property of O. W. Dickerson was on file in Phelps County at time of proceedings to determine ownership of property in which O. W. Dickerson was interested, the plaintiff was a necessary party to that proceeding.
The judgment of the Circuit Court of Phelps County was obtained by what in law amounts to fraudulent representations made to the Court in obtaining it, as set forth in the petition for construction of the instrument, and the apparent design and execution thereof by the parties who signed the stipulation for judgment, to defraud the plaintiff of its rights under the tax lien.
We tried to find out just what was said and done at the time the Court entered the judgment by stipulation, but without success. The Circuit Court of Phelps County promptly ordered all payments on the note for which Trav-L-Odge was sold paid into court when advised of demand having been made on the record owners by plaintiff. This tends to confirm our finding of a failure to notify the Court of plaintiff's claim when it entered its decree. That the judgment was collusively obtained is apparent in view of all the circumstances detailed. The rule in Missouri is that a judgment cannot be attacked for fraud in a collateral proceeding. Edmonds v. Scharff, 279 Mo. 78, 213 S.W. 823. But there are exceptions to this general rule. The rule does not apply to strangers to the record who would be prejudiced in some pre-existing right if the judgment were given full effect. Hocken v. Allstate Ins. Co., 235 Mo.App. 991, 147 S.W.2d 182. Since the Government was not a partly to the Phelps County judgment, it is not barred from collaterally attacking that judgment for fraud. In Arrowsmith v. Gleason, 129 U.S. 86, 9 S.Ct. 237, 241, 32 L.Ed. 630 (loc. cit. 635) the Court announced in no uncertain terms the power of a Federal Court to grant relief from a State court judgment for fraud: "`Relief is to be obtained, not only against writings, deeds, and the most solemn assurances, but against judgments and decrees, if obtained by fraud and imposition.' To the same effect is Bowen v. Evans, 2 H.L.Cas. 257, 281: `If a case of fraud be established, equity will set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivances by which it may have been attempted to protect them. It is immaterial, *272 therefore, whether such machinery and contrivances consisted of a decree of * * equity, and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud.'"
See Botz v. Helvering, 8 Cir., 134 F.2d 538. There the Court said 134 F.2d loc. cit. 545: "Where the method of procurement of a judgment against a corporation by an officer and creditor of the corporation worked a fraud in law upon other creditors it may be collaterally attacked."
The judgment of the Circuit Court of Phelps County is not binding on plaintiff for the further reason it was a consent judgment. See Botz v. Helvering, supra, 134 F.2d at page 545: "A consent judgment is binding only upon those parties consenting thereto."
There was no consent by plaintiff to the judgment of the Circuit Court of Phelps County and defendants do not claim there was any.
It is well settled Missouri law that a judgment is subject to collateral attack on the ground the Court had no jurisdiction over the subject matter. Hope v. Blair, 105 Mo. 85, 16 S.W. 595; Edmonds v. Scharff, supra. The proceedings in the Circuit Court were not original. The case was before the Circuit Court on a direct appeal taken by O. W. Dickerson after the Probate Court had rendered a decree making him a one-half owner of Trav-L-Odge. The Probate Court had no jurisdiction over the subject matter. This is conceded by all parties. The action in the Probate Court was to construe the provisions of the so-called "Business Lease". Such an action is beyond the very limited jurisdiction of a Probate Court. Probate Courts are constitutionally authorized to hear only matters of administration, probate and the like. The Probate Court being without jurisdiction over the subject matter of the original proceeding, the appellate court, the Circuit Court, was similarly without jurisdiction. A tribunal hearing a case on appeal can acquire no greater jurisdiction over the subject matter than the inferior court. State ex rel. Townsend v. Mueller, 330 Mo. 641, 51 S.W.2d 8; In re Wood's Estate, 138 Mo. App. 258, 120 S.W. 635; Abernathy v. Moore, 83 Mo. 65.

IV.
The "Business Lease" failed to contain sufficient terms and conditions to create a trust. The parties to the stipulation tried to supply the necessary provisions by decree of court.
Of the several fatal omissions and conditions of the "Business Lease" which render it void as a trust, of prime importance is that it provides the children of Mason D. Dickerson, claimed beneficiaries under the alleged trust, acquire no present right or interest in the subject matter of the trust. Even the decree of the Circuit Court did not attempt to cure this defect. Title to the property did not change during the lifetime of Jessie Maude Mundis. She could have disposed of it during her lifetime. Godard v. Conrad, 125 Mo. App. 165, 101 S.W. 1108. Even had the Court tried it could not fill this void and create a valid trust. Only the donor could do that. In re Soulard's Estate, 141 Mo. 642, 43 S.W. 617.
Another fatal weakness in the alleged trust is uncertainty in its material terms. When does the trust terminate? What becomes of the corpus? What use is to be made of the trust? These and other necessary attributes of a valid trust the stipulated decree attempted to supply. Van Studdiford v. Randolph, Mo.App., 49 S.W. 2d 250; Dahlgren v. Dahlgren, 55 App.D. C. 52, 1 F.2d 755.

V.
Plaintiff failed to carry the burden of proof on its claim that the funds of O. W. Dickerson were used to pay for the premises and that his daughter held the equitable title in trust for O. W. Dickerson. The letter written by the daughter at the time of purchase, with other facts of record, confirms the claims of defendant O. W. Dickerson that the daughter was the purchaser.

VI.
This brings us to the attempt of the plaintiff to enforce its lien against the one-half interest of O. W. Dickerson, free *273 from the claims of the purchasers Mooney and Kuziel.
The record on this issue is not in dispute. Never at any time did the record title to the real estate rest in O. W. Dickerson. Neither Mooney nor Kuziel signed the stipulation for decree in the Circuit Court of Phelps County or sought to influence the Court in entering the order.
Can the act of purchase of Mooney and Kuziel in proceeding on the basis of the "Business Lease", which we are here holding to be of no force, in so far as vesting any rights of sale in O. W. Dickerson as a trustee is concerned, be sustained on equitable ground?
At the time Mooney and Kuziel bought, Jessie Maude Mundis had been dead about a month. There was no administration on her estate at that time.
On the one hand it can be argued that the trust provisions of the "Business Lease" are so manifestly deficient and defective as to carry on their face proof of invalidity and notice to Mooney and Kuziel of that fact; on the other hand it can be urged that the instrument was not void ab initio as a trust, but voidable, as evidenced by proceedings to make it effective in the Circuit Court of Phelps County.
There being no evidence of bad faith on the part of either Mooney or Kuziel, and no foundation upon which to rest constructive notice of the plaintiff's claim, because record title never vested in O. W. Dickerson, we conclude it would be inequitable to penalize Mooney and Kuziel for failure to repudiate the right of O. W. Dickerson to sell as a trustee.
Plaintiff's notice of the levy was served on Mooney and Kuziel on December 7, 1948, and as of that service the innocence of the purchasers could no longer be maintained. They were put on their guard, or at least should have been, as reasonable persons, of the interest of O. W. Dickerson and the claim of plaintiff to that interest.
Plaintiff will submit decree, to include provision establishing a tax lien on a one-half interest in Trav-L-Odge, as the property of O. W. Dickerson, subject to repayment out of sale thereof of $5,375 to defendants Kuziels, representing one-half of the amount paid on purchase price of Trav-L-Odge prior to December 7, 1948; that said interest be sold and out of proceeds of sale said refund to defendants Kuziels be first made; that defendant O. W. Dickerson be ordered to pay to plaintiff, after deduction of the amount paid to Reed as balance on purchase price, one-half of amount received on sale consideration of Trav-L-Odge from defendants Kuziels and Mooneys, or either of them.
By apprporiate action defendants Kuziels may recover one-half of amount paid to Dewey Routh as trustee and Charles R. Sands, Circuit Clerk. This Court is without jurisdiction to enter such an order. The plaintiff has no interest in those funds. There is no diversity between the parties in interest.
NOTES
[1] Known as "Trav-L-Odge". It will be hereinafter so designated.